UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBIN A.,

              Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06645 EAW

## **INTRODUCTION**

    Represented by counsel, plaintiff Robin A. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

    Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 12; Dkt. 13) and Plaintiff's reply (Dkt. 14). For the reasons discussed below, Defendant's motion (Dkt. 13) is denied and Plaintiff's motion (Dkt. 12) is granted in part. The matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed his application for DIB on February 16, 2017. (Dkt. 11 at 19, 182-83).[1] In his application, Plaintiff alleged disability beginning August 29, 2016, due to back problems, depression, and insomnia. (*Id.* at 19, 65, 182). Plaintiff's applications were initially denied on June 15, 2017. (*Id.* at 19, 73-83). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Brian Kane on March 22, 2019, in Rochester, New York. (*Id.* at 34-57). On April 23, 2019, the ALJ issued an unfavorable decision. (*Id.* at 19-27). Plaintiff requested Appeals Council review; his request was denied on July 2, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2021. (Dkt. 11 at 21). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since August 29, 2016, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disease of the lumbar spine and right ankle sprain. (*Id.* at 21). The ALJ also found that Plaintiff's medically determinable impairment of inguinal hernia was nonsevere. (*Id*. at 22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). In particular, the ALJ considered the requirements of Listing 1.04 and 1.02 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). (*Id.*). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that Plaintiff was capable of performing his past relevant work as a hand packager and a salvager. (*Id.* at 26). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II.     Remand of this Matter for Further Proceedings Is Necessary

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ failed to properly consider the opinion of Plaintiff's treating physician and determined Plaintiff's RFC based on his own lay opinion. (Dkt. 12-1 at 16-23). For the reasons set forth below, the Court finds that the ALJ erred in evaluating the opinion evidence offered by Plaintiff's treating physician, and this error necessitates remand for further administrative proceedings.

A.     **Assessment of Medical Opinion Evidence**

Plaintiff's first argument is that the ALJ improperly rejected the opinions offered by Plaintiff's treating physiatrist, Oliver Masaba, M.D. (Dkt. 13-1 at 16-18). In response, the Commissioner argues that the ALJ thoroughly examined the opinions offered by Dr. Masaba, considered them in developing the RFC, and gave good reasons for the opinions he declined to adopt. The Court disagrees.

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight at step two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms

- 6 -

"that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

Plaintiff began treating with Dr. Masaba in May 2017. (Dkt. 11 at 435-39). Dr. Masaba's treatment records from Plaintiff's May 2017 appointment reflect that Plaintiff had suffered an August 11, 2015 work injury to his back, had returned to work following the injury for several months before being laid off in August of 2016, and was currently seeking employment. (*Id.* at 434, 436). Dr. Masaba found that Plaintiff was 50% disabled for workers' compensation purposes and limited to lifting 20 pounds, and should avoid climbing stairs frequently, should engage in reduced bending, and be allowed to take rest breaks. (*Id.* at 438). At a June 2017 appointment, Dr. Masaba performed an electromyogram study which reflected findings of no acute lumbar radiculopathy but showed the presence of chronic "old" bilateral L5 radiculopathic process. (*Id.* at 440). Follow up examinations in the months following reflected diagnoses of aggravated lumbar

spondylosis, multilevel; multilevel neural foraminal stenosis; lumbar disc herniation; lumbar radiculopathy, sacroiliac joint dysfunction; and myalgia/myositis. (*Id.* at 450). An MRI of Plaintiff's lumbar spine was conducted on July 12, 2017 which revealed disc osteophyte complex and facet hypertrophic change resulting in mild bilateral narrowing at L3-4; diffuse annular bulge indenting the ventral sac mildly narrowing the central canal and disc osteophyte complex and hypertrophic change at L4-5; and bilateral neural foraminal narrowing and a subtle grade 1 anteriolisthesis occurring at L5 on S1. (*Id.* at 496). At subsequent appointments, Dr. Masaba continued to opine that Plaintiff was restricted to no lifting over 20 pounds floor to waist, no prolonged stairs, no climbing ladders, no repeated bending or twisting of low back, and must be permitted rest breaks. (*Id.* at 457, 491).

On April 9, 2018, Dr. Masada completed a form entitled, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." (*Id.* at 425-433). In it, Dr. Masada opined that Plaintiff could lift and carry up to 10 pounds frequently, up to 20 pounds occasionally, and never more than 20 pounds. (*Id.* at 425). The specific medical or clinical findings that Dr. Masada identified to support his assessment was Plaintiff's decreased range of motion most notably with extension, lower back pain, and sciatica on the right side. (*Id.* at 425). He also limited Plaintiff to sitting for 30 minutes, standing for 15 minutes, and walking for 20 minutes at a time. (*Id.* at 426). Dr. Masada further opined that Plaintiff was limited to sitting 4 hours, standing for 2 hours, and walking for 2 hours in an 8-hour workday. (*Id.*). Dr. Masada indicated that Plaintiff was capable of frequent reaching, handling, fingering, and feeling, and only occasional pushing and pulling. (*Id.*

at 428). Dr. Masada opined that Plaintiff could never climb ladders or scaffolds, kneel, crouch, or crawl. (*Id.* at 429). In addition, Dr. Masada opined that Plaintiff's limitations existed since August 11, 2015. (*Id.* at 431).

On the same day, Dr. Masada completed a "Pain Limitation Questionnaire." (*Id.* at 433). In the questionnaire, Dr. Masada checked boxes indicating that pain would prevent Plaintiff from performing his work; would interfere with his concentration, persistence, or pace; would likely cause him to miss work at least 2 full days per month; and was likely to continue for at least 12 months. (*Id.* at 433). Dr. Masada concluded that pain would negatively impact Plaintiff's productivity by no more than 20-25% on a "bad day," resulting in a marked limitation overall. (*Id.*).

The ALJ gave Dr. Masaba's opinions little weight. The ALJ's reasons for providing little weight to Dr. Masaba's opinions were that the opinions were specific to the workers' compensation context, not consistent with the evidence in general, and the record as a whole reflected that Plaintiff was more capable than Dr. Masaba's reports suggested. Specifically, the ALJ stated:

> Dr. Masaba indicated in nearly every report that [Plaintiff] was 50% disabled; this again, is specific to the workers compensation context and given little weight here. However, Dr. Masaba also noted in these reports that [Plaintiff] should be limited to 20 pounds lifting, should avoid climbing stairs frequently, should not climb vertically, should engage in reduced bending, and should be allowed extra breaks. (Ex. 12F). Dr. Masaba went even further in an April 2018 medical opinion, indicating that [Plaintiff] would struggle to perform even the minimal requirements of light to sedentary work and would experience serious manipulative, postural, and even environmental restrictions. (Ex. 11F). These opinions are not consistent with the evidence in general, as I have reported above. Based on

> the record as a whole, the claimant was more capable than Dr. Masaba's reports suggested and as such I gave his opinions limited weight.

(*Id.* at 26). While the aforementioned discussion addresses an assessment of Dr. Masaba's medical source statement from the same date, the ALJ's written determination does not discuss any of Dr. Masaba's opinions from the pain questionnaire. Accordingly, it is not clear to the Court whether the ALJ considered it.

While the ALJ is not required to mention every item of evidence in the record, *see Holler v. Saul*, 852 F. App'x 584, 586 (2d Cir. 2021), a failure to discuss a treating physician's opinions constitutes error and may justify remand, *see Kelly S. v. Kijakazi*, No. 3:20-CV-1232 (DJS), 2022 WL 279555, at *3 (N.D.N.Y. Jan. 31, 2022) ("The Court concludes that the failure of the ALJ to articulate an analysis of Dr. Khan's opinion, and its support or contradiction to other medical evidence in the record, warrants a remand."); *Heather Ann P. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06429 (JJM), 2022 WL 167539, at *3 (W.D.N.Y. Jan. 18, 2022) ("Accordingly, ALJ Smith's failure to discuss, or even acknowledge, Dr. Kimball's functional assessment was legal error."); *Colon Medina v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 295, 303 (W.D.N.Y. 2018) ("The ALJ's failure to consider and address these opinions alone was error warranting remand."); *Lewis v. Colvin*, No. 1:14-CV-00794 (MAT), 2017 WL 2703656, at *2 (W.D.N.Y. June 23, 2017) ("In this case, the ALJ failed to even discuss Dr. Reynolds' opinion. . . . Moreover, this error was not harmless, because the limitations opined in Dr. Reynolds' opinion were quite restrictive and could have resulted in a finding of disability—or at the very least a more restrictive RFC finding—if given weight by the ALJ."). Here, while the ALJ discussed in detail Plaintiff's treatment by Dr. Masada and several of his other opinions, a discussion of the

opinions contained in the pain questionnaire are wholly absent from the ALJ's determination. This error is material because these opinions relating to Plaintiff's pain limitations and their interference with Plaintiff's ability to concentrate and perform work are separate and distinct from those in the medical source statement and cover different limitations from those discussed by the ALJ. It is not clear to the Court from the decision whether the ALJ considered the opinions relating to Plaintiff's pain limitations in determining that Plaintiff is capable of performing the full range of medium work and his past relevant work.

The Court has also considered whether the ALJ's failure to address Dr. Masada's opinions regarding pain was harmless. *See, e.g., Dayle B. v. Saul*, No. 3:20-cv-00359 (TOF), 2021 WL 1660702, at *10 (D. Conn. Apr. 28, 2021) ("An ALJ's failure to explicitly discuss an opinion from a treating provider may be considered harmless when the contents of the report would not have changed the outcome of the decision."); *Robert B. v. Comm'r of Soc. Sec.*, No. 6:17-CV-0508 (DJS), 2018 WL 4215016, at *6 (N.D.N.Y. Sept. 5, 2018) ("An error in weighing a physician's opinion may be considered harmless where proper consideration of that opinion would not change the outcome of the claim."); *Price v. Comm'r of Soc. Sec.*, No. 14-CV-9164 (JPO), 2016 WL 1271501, at *4 (S.D.N.Y. Mar. 31, 2016) (finding failure to apply treating physician rule not harmless error where it was not clear what conclusion the ALJ would have reached upon proper application of the legal standards).

In this instance, the ALJ's failure to consider Dr. Masada's opinion is problematic because Dr. Masada's evaluation of Plaintiff's pain limitations is more restrictive than the

RFC and had the opinions contained in the pain questionnaire been credited, it could have changed the outcome of Plaintiff's claim. Indeed, when the vocational expert was asked at the hearing, "[i]f I had an individual who can perform the full range of light work except would be incapable of completing a full work day or work week," the Vocational Expert responded that Plaintiff's past relevant work would be ruled out. (Dkt. 11 at 53). Moreover, this is not a case where there was other opinion evidence upon which the ALJ could rely in determining Plaintiff's RFC. Dr. Masada was the only medical provider whose opinions were substantively considered and the pain questionnaire appears to be the only opinion evidence in the record that takes into consideration the impact Plaintiff's pain limitations would have on his productivity. Thus, a failure to expressly consider and discuss these opinions cannot be considered harmless.

Accordingly, the Court finds error in the ALJ's assessment of Dr. Masada's opinions and that the error is not considered harmless. Remand is warranted on this basis.

### B. Plaintiff's Remaining Arguments

To the extent Plaintiff identifies other reasons why he contends the ALJ's decision should be vacated, the Court need not reach those arguments because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary. *See, e.g., Samantha D. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1280 (ATB), 2020 WL 1163890, at *10 (N.D.N.Y. Mar. 11, 2020); *Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 240-41 (W.D.N.Y. 2019).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is denied, and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is granted to the extent that the matter is remanded for further administrative proceedings consistent with this Decision and Order. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

                                                                ELIZABETH A. WOLFORD
                                                                Chief Judge
                                                                United States District Court

Dated:     February 28, 2022
            Rochester, New York